UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MELISSA HIGHSMITH** <br> **4118 W. 57TH ST.** <br> **Cleveland, OHIO 44144,** <br><br> -and- <br><br> **SHANELL GIST** <br> **104 E. 233rd St** <br> **Euclid, Ohio 44123** <br>                  Plaintiffs, <br><br> -vs- <br><br> **CITY OF EUCLID** <br> **545 E. 222nd /St.** <br> **Euclid, Ohio 44123** <br><br> -and- <br><br> **Euclid Police Officer** <br> **DANIEL FERRITTO** <br> **545 E. 222nd /St.** <br> **Euclid, Ohio 44123** <br>                  Defendants. | CASE NO. <br><br> JUDGE <br><br> **COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREON** |

    Euclid police Officer Daniel Ferritto assaulted and menaced two young women on March 6, 2017.

    This is a civil rights actions for the violations against Plaintiff's Highsmith and Gist arising from the egregious conduct of Defendant Officer Ferritto.

    Defendant officer Ferritto is responsible for injuring Plaintiffs. Further,

1

the unconstitutional policies and practices of the Euclid Police Department have resulted in the excessive use of force against too many citizens of Euclid, Ohio. The City is therefore also liable for Plaintiffs' injuries.

## JURISDICTION AND VENUE

1. The Jurisdiction of this court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States. Supplemental jurisdiction over the claims arising under state law is invoked under 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiffs' claims also occurred in this judicial district.

## PARTIES

3. Plaintiff, Melissa Highsmith ("Plaintiff Highsmith"), is an Ohio citizen, with permanent residence in Cleveland, Cuyahoga County, Ohio.

4. Plaintiff, Shanell Gist ("Plaintiff Gist"), is an Ohio citizen, with permanent residence in Euclid, Cuyahoga County, Ohio.

5. Defendant Daniel J. Ferritto ("Defendant Ferritto") was, at the time of this occurrence, a duly appointed officer employed by the City of Euclid and engaged in the conduct complained of in the course and scope of his employment with the City of Euclid.

6. At the times material to this complaint, Defendant Ferritto was

acting under color of state law, ordinance, and/or regulation. He is being sued in his individual capacity.

7. Defendant City of Euclid ("Defendant City") is a municipal corporation, duly incorporated under the laws of the State of Ohio, is the employer and principal of Defendant Ferritto, and is responsible for the policies, practices and customs of its Police Department and City Council.

## FACTS

8. On March 6, 2017, at around 5:30 PM, Plaintiff Highsmith arrived at Plaintiff Gist's apartment, located at 104 E. 233rd St., in the city of Euclid, Ohio.

9. Plaintiff Highsmith and Plaintiff Gist ("Plaintiffs") were reconciling some recent conflicts in their friendship and enjoying a quiet evening at Plaintiff Gist's apartment.

10. Plaintiff Gist's daughter, A.M., was playing in her bedroom while Plaintiff's drank and conversed in the living room. A.M.'s room was secured by a baby-gate blocking the doorway of the child's room.

11. Around 6:15 PM, Plaintiffs went outside to retrieve a bottle of Moët champagne from Plaintiff Gist's vehicle. Plaintiff Gist had purchased the champagne to celebrate her final semester of grad school. Once outside, the Plaintiffs continued to converse and smoke cigarettes.

12. Plaintiff Gist had just recently purchased a new car, and Plaintiff Highsmith asked Plaintiff Gist if she could see the new car while they were

outside smoking.

13. Both Plaintiffs then proceeded to sit inside of the car, but did not start the engine, or even put the keys inside of the ignition.

14. The ladies then exited the vehicle and begin walking back inside of Plaintiff Gist's apartment around 6:30 PM.

15. Plaintiffs noticed 3 police cars parked without lights in Sims park, which is across the street from Plaintiff Gist's parking lot, and within eye shot.

16. The Plaintiffs walk back into the apartment. Suddenly, within 5 seconds of being inside of the apartment, Defendant Ferritto kicked in the door of the apartment, accompanied by several other City of Euclid police officers. There was no knock and announce conducted by the police officers prior to kicking the door open.

17. Upon entering the apartment, Defendant Ferritto began screaming at Plaintiffs: "you don't fucking run from me! . . . you fucking stop!"

18. Plaintiffs tried to explain that they were not running from the police officers and were genuinely confused as to why the Euclid police were in the apartment, and why they had entered the apartment in such a violent manner without first knocking and announcing their presence.

19. Plaintiff Highsmith demanded to know the cause for the intrusion and demanded an explanation from Defendant Ferritto.

20. Defendant Ferritto responded to Plaintiff Highsmith's demand by grabbing her by her collar, picking her up, and body-slamming her on the

4

concrete floor of Plaintiff Gist's apartment entrance. Plaintiff Highsmith's head violently smacked against the ground, and the bottle of Moët that she had been holding in her hand shattered and spilled everywhere.

21. Defendant Ferritto's conduct caused Plaintiff Highsmith to suffer pain, as well as several lacerations, contusions, and bruising to her face, arms, legs, and body.

22. Defendant Ferritto then pinned Plaintiff Highsmith on the ground, face down, and hand-cuffed her. Plaintiff Gist was handcuffed as well.

23. At no point did Plaintiff Highsmith resist arrest. At this point, none of the police officers had informed either of the Plaintiffs as to why they were being arrested, or even informed them that they were under arrest at all.

24. When Defendant Ferritto saw a bottle of Hennessey in the living room, and discovered A.M. in her room, he called Children's Services. Plaintiff Gist pled with Defendant Ferritto to let her call her grandmother to come and pick up A.G., but Defendant Ferritto ignored her.

25. When the police finished their walkthrough of the house, they uncuffed Plaintiff Gist.

26. Defendant Ferritto then told Plaintiff Highsmith that she was going to jail for running from the police, and that Plaintiff Gist was getting a ticket for child endangerment.

27. As the Euclid police prepared to take Plaintiff Highsmith out of the apartment, they had a quiet discussion about their body cameras in front of the

Plaintiffs. The officers were overheard by Plaintiffs conspiring to give a false, misleading, and incomplete version of the events to their superiors, prosecutors, and the public, in order to cover up their own misconduct. The police officers agreed that that 'none of their body cameras were turned on.'

28. Defendant Ferritto then had another officer take Plaintiff Highsmith out into a police cruiser and retrieve a camera. Plaintiff Highsmith was never mirandized, nor informed as to what charges she was being arrested for by any of the Euclid police officers at the scene of the arrest.

29. Through this encounter, Plaintiff Highsmith, bloodied and disoriented as a result of Defendant Ferritto's conduct, pled with the Euclid police officers to treat her fairly and informed them that she herself was in school to become a police officer.

30. Once inside of the police cruiser, Defendant Ferritto began to crudely mock Plaintiff Highsmith, and told her she "would never be a cop."

31. Upon conveying Plaintiff Highsmith to the Euclid City jail for booking, Defendant Ferritto instructed the jail staff to: "have fun with this one, she's a drunk bitch."[1]

32. Plaintiff Highsmith continued to wait for hours at the Euclid City Jail, for medical treatment and notice as to the nature of her charges. A

---

[1] Defendant Ferritto has a documented history of mocking victims of police brutality at the hands of Euclid Police Officers. On August 12, 2017, following the controversial beating of Richard Hubbard III, Defendant Ferritto was captured on police radio boasting that he: "didn't know we would have this much fun." Defendant Ferritto was also actively involved in the violent, and controversial arrest of Damien C. Parker, an outspoken activist and critic of the Euclid Police Department, on November 2, 2017.

correctional officer in the Euclid jail found out that Plaintiff Highsmith's boyfriend is a correctional officer in the Cuyahoga County jail, and the guards then gave Plaintiff Highsmith treatment for her wounds.

33. Defendant Ferritto had no probable cause or reasonable suspicion to detain Plaintiff Highsmith.

34. Plaintiff Highsmith was eventually charged with an open container (passenger) violation, obstruction of justice, and resisting arrest, in Euclid Municipal Court Case # 17CRB00460, and 17TRD00813.

35. Plaintiff Gist was eventually charged with child endangerment in Euclid Municipal Court Case # 17CRB00458.

36. All charges were eventually dismissed against both Plaintiffs, due to the excessive use of force used against Plaintiff Highsmith, and the lack of any merit to Plaintiffs' other charges.

37. In violating Plaintiffs constitutional rights, Defendants engaged in willful, wanton, reckless, and/or negligent conduct. This unconstitutional conduct and willful, wanton, reckless, and/or negligent conduct was the direct, actual, and proximate cause of Plaintiffs' injuries.

38. As a direct and proximate cause of said Defendants' conduct, either individually and/or in concert, Plaintiffs have suffered and continue to suffer lasting injuries including, inter alia, physical pain and harm, and serious mental, emotional, and psychological injuries and damages.

39. The injuries suffered by Plaintiffs were all preventable, had

Defendants not engaged in unconstitutional conduct in violation of their fundamental rights.

40. Upon information and belief, the City of Euclid has failed to effectively investigate or impose any discipline on Defendant Ferritto for his illegal behavior.

### FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983 Claim for Unconstitutional Search and Seizure

41. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

42. The actions of Defendant Ferritto, as alleged in the preceding paragraphs, violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution to be secure in their person against unreasonable searches and seizures, and their right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

43. The actions of Defendant Ferritto as alleged in this complaint were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs injuries.

44. Defendant Ferritto acted under color of law and within the scope of his employment when he took these actions.

45. As a direct and proximate cause of Defendant Ferritto's misconduct, Plaintiffs suffered and continue to suffer injury and damages as set forth in this complaint.

## SECOND CLAIM FOR RELIEF – 42 U.S.C. § 1983 Claim for Malicious Prosecution

46. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

47. In the manner described more fully above, Defendant Ferritto instigated, influenced, or participated in the decision to prosecute Plaintiffs, knowing there was no probable cause for the criminal prosecution.

48. The charges were terminated in Plaintiffs' favor.

49. Defendant Ferritto accused Plaintiffs of criminal activity knowing these accusations to be without genuine probable cause.

50. Defendant Ferritto made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

51. Defendant Ferritto engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Plaintiffs' substantive due process rights in violation of the Fourteenth and Fourth Amendments to the United States Constitution.

52. Defendant Ferritto acted under color of state law and within the scope of his employment when he took these actions.

53. As a direct and proximate cause of Defendant Ferritto's misconduct, Plaintiffs' suffered and continued to suffer injury and damages as set forth in this Complaint.

**THIRD CLAIM FOR RELIEF- 42 U.S.C. § 1983 Monell Policy Claim Against Defendant City of Euclid**

54.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

55.     The actions of Defendant Ferritto, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Euclid and its Police Department.

56.     The City of Euclid, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

57.     Despite the facts and circumstances surrounding the arrest of Plaintiff Highsmith that clearly demonstrate that the actions of Defendant Ferritto was unreasonable and unlawful, upon information and belief, the City of Euclid has failed to effectively investigate or impose any discipline on Defendant Ferritto for his illegal behavior.

58.     At all times material to this complaint, Defendant City and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

>   a.     The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of

        Euclid police officers who engage in unjustified use of excessive and unreasonable force and malicious prosecution;

   b.   The police code of silence;

   c.   The encouragement of excessive and unreasonable force and malicious prosecution;

   d.   The failure to properly to properly investigate the use of excessive and unreasonable force and malicious prosecution against civilians by City of Euclid police officers;

   e.   The failure to properly discipline, supervise, monitor, counsel or otherwise control City of Euclid police officers who engage in unjustified use of excessive and unreasonable force for malicious prosecution; and/or

   f.   The failure to properly train and supervise City of Euclid police officers with regard to constitutionally sound measures regarding the use of force when effecting an arrest.

59. Recently, a slew of allegations of excessive force against Euclid police officers have arisen, some of which are captured on video.

60. The aforementioned de facto policies, practices, and customs of the Euclid Police Department include a pattern of acts of excessive use of force and malicious prosecution, and other willful, wanton, and/or reckless behavior, leading to harmful consequences to citizens.

61. The Euclid Police Department has engaged in little or no

meaningful discip,inary action in response to this pattern of misconduct, thereby creating a culture or climate that members of the department can escape accountability with impunity.

62. This pattern is the moving force behind the conduct of Defendant Ferritto in searching, seizing, and prosecuting Plaintiffs, which was not an isolated incident of unconstitutional policing within the City of Euclid by its officers.

63. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers engaged in misconduct.

64. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

65. That the unconstitutional actions of Defendant Ferritto as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these

acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

66. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury to Plaintiffs, because Defendant Ferritto had good reason to believe that his misconduct would bot be revealed or reported by fellow officers or their supervisors, and that he was immune from disciplinary action, thereby protecting him from the consequences of his unconstitutional conduct.

67. But for the belief that he would be protected, both by fellow officers and by the City of Euclid Police Department from serious consequences, Defendant Ferritto would not have engaged in the conduct that resulted in the injuries to Plaintiffs.

68. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference and encouraged Defendant Ferritto to commit the acts alleged in this complaint against Plaintiffs, and therefore acted as the moving forces behind the direct and proximate causes of the injuries to Plaintiffs.

**FOURTH CLAIM FOR RELIEF- State Law Claim for Willful, Wanton, and Reckless Conduct**

69. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

70. Defendant Ferritto failed to exercise due care, and acted with a

malicious purpose and/or in bad faith and/or in a willful and/or wanton and/or reckless manner while engaged in police functions and activities, including but not limited to unreasonable search and seizure and malicious prosecution against Plaintiffs.

71. Defendant Ferritto, as set forth herein, engaged in negligent, reckless, and/or willful and/or wanton misconduct such that they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq*.

72. Defendant Ferritto acted under color of state law and within the scope of his employment when he took these actions.

73. As a direct and proximate cause of Defendant Ferritto's misconduct, Plaintiffs' suffered and continue to suffer injuries and damages as set forth in this Complaint.

### FIFTH CLAIM FOR RELIEF- State Law Claim for Malicious Prosecution

74. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

75. In the manner described more fully above, Defendants, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Plaintiffs' without probable cause.

76. As a consequence of the criminal prosecution, Plaintiff Highsmith was unlawfully seized and deprived of liberty.

77. Both Plaintiffs' prosecutions were terminated in their favor when the case against them were dismissed.

78. The actions of Defendants were committed intentionally, maliciously, culpably, in bad faith, and/or in a willful, wanton, or reckless manner.

79. Defendants acted in reckless disregard of Plaintiffs' rights.

80. As a direct and proximate cause of this malicious prosecution, Plaintiffs suffered injuries, including but not limited to, loss of liberty, emotional distress, loss of reputation, and other damages set forth in this Complaint.

81. Defendants acted under color of state law and within the scope of their employment when they took these actions.

**SIXTH CLAIM FOR RELIEF- State Law Claim for Assault and Battery**

82. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

83. The actions of Defendant Ferritto towards Plaintiff Highsmith created in her the fear and apprehension of an immediate, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification.

**SEVENTH CLAIM FOR RELIEF- State Law Claim for Intentional Infliction of Emotional Distress**

84. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

85. Defendant Ferritto engaged in extreme and outrageous behavior as alleged in this complaint.

86. Defendant Ferritto intended such conduct to inflict such severe emotional distress upon Plaintiffs and knew his conduct would cause Plaintiffs severe and serious emotional distress, which was of a nature that no reasonable person could be expected to endure.

87. Defendant Ferritto's conduct did, in fact, cause such distress.

88. As a direct and proximate result of Defendant Ferritto's outrageous conduct, Plaintiffs were injured and suffered actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Melissa Highsmith, and Shanell Gist, demands that judgment be entered in their favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial, for the violation of Plaintiffs' rights;

B. Punitive damages in an amount to be determined at trial for the willful, wanton, malicious, and reckless conduct of Defendants;

C. Declaratory and injunctive relief against the City of Euclid enjoining policies, practices, and customs shown to encourage the use of excessive and unreasonable force against civilians, and ordering the institution of

policies, procedures, and training for the Euclid Police Department to bring them into compliance with constitutional standards;

D. Attorney fees and the costs of this action and other costs that may be associated with this action pursuant to 42 U.S.C. Section 1988; and

E. All other relief which this Honorable Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                Respectfully submitted,

*/s/Christopher McNeal, Esq.*
CHRISTOPHER MCNEAL, ESQ. (#0096363)
MCNEAL LEGAL SERVICES, LLC.
5333 Northfield Road, Suite 300
Bedford Heights, Ohio 44146
(216) 714-5520 – Telephone
chris@mcneallegalservices.com - Email

*Attorney for Plaintiffs Melissa Highsmith and Shanell Gist*